Case No. 17-7063, Chicago Insurance Company v. Paulson & Nace, PLLC and Barry John Nace Appellants, Gabriel Asad and Sarah Gilbert. Mr. Horvath for the appellants, Ms. Sark for the appellate. Mr. Horvath, good morning. Good morning. May it please the Court, Steve Horvath for Paulson & Nace and Barry Nace. I've reserved three minutes for rebuttal. There are two issues I'd like to address in my argument here today on the issue of whether or not Chicago Insurance has a duty to indemnify Paulson & Nace and Barry Nace under their policy of insurance. The first is the application of Virginia Code Section 38.2-2226. And the second is the issue as to whether or not, on a summary judgment status, the Court should have found that there is no reasonable basis to believe that the insured had reached a professional duty. The Court's aware that's reviewed de novo, and in summary judgment, the evidence is looked at the likeness favorable to the insured or Paulson & Nace in this case. The suit was filed in this case for the malpractice within the statute of limitations on July 24, 2006. The suit was filed saying parent for child rather than child for parent. And although there are prior Virginia Supreme Court cases that have the same caption in cases in federal court and cases in state court, that rule has now been interpreted to say you must file child for parent by parent rather than parent for child. Not something that's well known in the legal community, a nuance in Virginia law. Can we move to what he did that is unquestionably, well, if it's not malpractice, but by missing the deadline, the statute of limitations? They did not miss the deadline because they filed it within the statute of limitations. No, I'm talking about the second, the one that complies with Virginia procedural practice. Was after the period of limitations, but then the question is would that relate back to the first one under Virginia's relation back statute? Well, the first one was dismissed without prejudice. That's correct. All right, and then the lawyer waited until after the statute of limitations had passed to file the next one, right? Well, yes, what happened is they filed the lawsuit four days before the statute ran. The second one? The first one. All right, I'm talking about the second one. Yes, the second one was filed in October. After the statute of limitations. After the statute of limitations. Okay. But it was felt at that time that there were, if you actually look at the argument before the circuit court in Richmond, they had a number of issues that they thought were winner issues. The most important of which, this was just a misnomer, they could still be corrected. Even though the first case was dismissed, because of the fact that the first one was timely filed, everyone could put on notice of that lawsuit that they could use that and latch on to that and use that as a benefit to go forward. That was the theory. That is not a theory that an average layperson would know about that would not need expert testimony. In fact, as a trial court, in the medical malpractice case, both sides had expert witnesses to talk about that nuance and what it meant and how that should be interpreted. So it's not a simple issue that, as the court below found, an average layperson should understand. Can I just ask a practical question, which is why wasn't the first complaint just amended? I don't have the answer to that. I don't know why it wasn't done that way. It was dismissed and was dismissed. If you look at the argument, the court said, well, that wasn't filed correctly. I have to dismiss it without prejudice. And we have this back-up lawsuit here. We'll just move forward on that. But I don't know. Again, that would be an issue that you would need expert testimony on to say whether a reasonable person would believe that there was a breach of a professional duty. And we didn't have that below. Chicago Insurance chose not to testify. But we have the passage of over a year. I mean, is there anything in the record that they were pursuing some sort of a settlement or anything like that? I mean, that's the statute of limitations run out. Well, what happened, again, the timeline is this. The surgery occurred on July 28, 2004. The first lawsuit was filed July 24, 2006. One of the issues that you will see discussed below as to why they still thought there was plenty of time is whether or not there was continuing care. Because if there's continuing care by the doctor, that pushes back the statute of limitations. That was an issue that was open. The second lawsuit was filed three months later on October 25, 2006. The first lawsuit was not dismissed until four months after that on February 27, 2007. So we have a timeline here of what they thought everything was fine. And they thought they would be able to get it to relate back. And if you look at the testimony, it wasn't until they were actually getting ready to finish their briefs before the Virginia Supreme Court that they said, hey, we really may have a problem here because this is just a simple misnomer. Misnomers are corrected all the time. The idea is to go forward on the merits with the liberal amendments to pleadings that we have. There shouldn't be any issue with this. Again, the problem below was that the court took that issue away from a finder of fact. And even though Chicago Insurance did not designate an expert on that, the court substituted her own opinion saying that's an absolute breach. Any reasonable attorney would know that. Well, with respect to the district court judge, if any reasonable attorney would know such an obvious thing about this misnomer issue, then why do we have a Virginia Supreme Court decision that has it in its caption the wrong way? Why would we have federal court cases that have it in the caption the wrong way? Why would we have state court cases that have it in the wrong way? So would the expert – what exactly is the expert going to do? The expert is going to say that, in fact, a mistake wasn't made? No, he's going to say whether there was a reasonable basis to believe. The policy says that as a condition preceding the coverage, they have to say that the insured had, quote, no reasonable basis to believe that the insured had breached a professional duty. The expert would say there would be no reasonable basis to believe that a breach had not occurred. That's the question here. Because there's two parts to the policy. That's the first part. The second part says, or had it reasonably foreseen that a claim would occur. Reasonable foresees actual knowledge. And they don't have that in here. But our position is that all of that doesn't apply because this case, the malpractice case, was pending in Virginia. And Virginia has the power to regulate its policies of insurance and enforcement of policies of insurance, just like the United States Supreme Court case in Watson that we cite, that if the local jurisdiction has a rule concerning insurance policies, they have strong interest in enforcing that. Virginia has a strong interest in saying, we're not going to let insurance companies come back and say that you have a policy defense. But do you have standing to even raise that? Absolutely. The reason is a couple of folks. First of all, 38.222.6 says it's waived. It doesn't say it's waived as to claims by the claimant only. It says it's waived. It's gone. Second, there's no Virginia Supreme Court case that says it only applies to claimants. Third, at that point in time, the claimant does not have an interest under the policy of insurance. At that point in time, the claimant is not under Virginia law considered to be a third-party beneficiary. The claimant has only an interest in that policy once a judgment has been entered and there's a library of fair and efficient center that's returned not found. Once that's happened, they then have a cause of action. So to say that you have to apply that only to benefit the claimant is contrary to how Virginia has their insurance policies work, and there's no Virginia Supreme Court case on that. If that is an issue, this Court always has the power to ask for a certified question on it, but that is not the way the Virginia Supreme Court has interpreted it. The statute is very clear. Virginia is very clear in the way they interpret statutes. They say we look at the claimant in the statute. Here it doesn't say the claimant has a right, the claimant has a beneficiary. It just simply says that the failure to give notice within 45 days will result in a waiver of that defense. That's it. Wasn't it argued in Virginia that D.C. law applies? No. On the issue of the interpretation of the policy, yes. There's no question that D.C. law applies to interpretation of the policy. So the issue concerning no reasonable basis to believe is controlled by D.C. law. The issue concerning the right under the policy, right or obligation to give notice, has to apply Virginia law. And it was never argued that that statute didn't apply there. All right. So I'm reading from JA 308, and this was Paulson and Nace's argument that the only issue before the court is the insurance contract, not the underlying tort claim. There's simply no connections to Virginia as between CIC, Paulson and Nace, Berry-Nace, and interpretation or enforcement of the insurance contract. That's correct. And if you recall what happened in that case? I didn't read the record. And the two counts in this precedent, the only cases are so on and so forth. And in the Eastern District, you took the position that D.C. law should apply. I respect. All right. You've said it. I understand it. If I took that position then, I was not meant to say it doesn't apply to 38.2226. It only applied to the interpretation of the contract. And the interpretation of the contract of insurance is what does the term no reasonable basis believe mean. The issue concerning the enforcement of the contract, of course, has to be done by Virginia's police power and 38.2226 applies. The court did not rely on that statement below in making the decision. There's no estoppel by that. We are allowed to make contrary arguments from time to time. We can't do that. We can't plead in the alternative. Then a lot of people would be in trouble. But it was no intent to waive that position below. Can I ask one follow-up question on this, if I could, on a reasonable basis to believe? Is your argument that the expert would have said that the mistake was not, in fact, a mistake? Or is it that the mistake isn't one that would lead to a determination of actionable mistake because it just wasn't important enough? Would a reasonable attorney think that that was breach of professional duty is what the question is. So you don't dispute that, and an expert couldn't dispute that, in fact, it was a mistake. They could dispute that it was a mistake. I think they could, yes, absolutely. But I guess I didn't read you to be making that argument at any point in your briefs. It seemed like your briefs acquiesced in the notion that this was wrong, but then you made arguments to the effect that, well, there's captions in Virginia Supreme Court cases that show that this mistake is made, which that's to say the mistake is made, but it's not to say that it's not a mistake in the first place. Right. We have taken the position throughout the case that that was not a mistake. We've never admitted that that was a mistake that was made on the part of Paulson and Nace and Barry and Nace. The court below, in the other case, found it was a mistake. We disagreed with that ruling. Here, the question is not whether there was a mistake or not, but whether or not a reasonable attorney would believe that there was a mistake. So that's a different question in my mind, because you can make a mistake and have no idea that it was a mistake. Law can change. It can be an error in judgment. There's lots of different types of mistakes that you can have. I was just simply focusing on the language in this particular policy, no reasonable basis to believe, rather than going through anything else, because I thought that's what we have to focus on here is that language, no reasonable basis to believe. So would a reasonable attorney understand that there was a breach of professional duty to file a suit the way it was? That's the question. Thank you very much. Ms. Sarp? Good morning. May it please the Court, my name is Paulette Sarp, and I represent the Appley Chicago Insurance Company in this matter. I wanted to start off with really what is the critical and controlling issue in this case. Paulson and Ace have asserted a number of arguments to try to circumvent the policy language, the application of the Virginia statute, waiver and estoppel, and I will address that if necessary. But really all this Court has to focus on is our policy language and a couple simple facts. This policy that we issued to Paulson and Ace is a claims made and reported policy, and in certain circumstances it can cover malpractice committed before the policy incepts. The only way it will do that, though, is if at the time the policy is issued, none of the insureds had a reasonable basis to believe that an error had occurred or that a claim might be brought against it. Isn't that a standard clause with the claims made? Is that a standard clause? Yes, absolutely. And so here are the facts that you need. And I submit that the district court did not apply her expert opinion on this issue. This is not something that expert evidence testimony is required. There are numerous cases in the district that support that notion. What she did was look at these facts that we're going to talk about, apply it to the language, and conclude that no reasonable juror could conclude otherwise. And here are the facts. The Paulson and Ace firm waited until the last few days before the statute expired. They filed a medical malpractice claim on behalf of their client. The defendants immediately moved to dismiss and argued that Paulson and Ace had not complied with this Virginia statute that designates how a plaintiff must be named. The Nace defendants concede in their depositions that the reason they filed the second lawsuit was to correct the error that had been made in the first lawsuit. So you could stop right there. Not only would a reasonable attorney believe that an error had been committed, the Nace defendants have conceded that. But we don't have to stop right there. The second lawsuit was filed after the statute of limitations had expired. There's no dispute about that. Again, the defendants moved to dismiss. And the state court in Virginia dismissed, with prejudice, the second lawsuit. This all happened, the actual dismissal of the second lawsuit happened just within weeks of when Paulson and Ace submitted their application to CIC. Mr. Horvath has argued that how could a reasonable attorney know that a mistake had been made? I submit that whether Mr. Nace and Paulson and Ace agreed with the court's ruling is really not the issue. At least one trial court, two trial courts, had issued orders that there was a mistake. Whether that's corrected on appeal, whether the insured believe that it might be corrected on appeal, there are a multitude of cases, none of which were responded to by Paulson and Ace, holding that simply because an insured believes that, boy, we can get this corrected on appeal, or our client told us he isn't going to sue us, really isn't the issue. It's at the time that they filed the application they knew that two trial courts had ruled they had committed a mistake. I guess from the company's perspective, if those facts don't put a reasonable person on notice, a reasonable attorney on notice of an error, then we don't know what is. Essentially, that language in our policy that says we're not going to cover mistakes that happened before this policy was issued is essentially written out of the policy. There may be circumstances where the alleged error at issue might not be so clear, where, for example, maybe an attorney drafted a will, and the client might have argued or brought it to his attention that you didn't write this correctly. I don't know whether that would be something that would put a reasonable attorney on notice of an error. So there is a sliding scale, but these facts are at the very end of the sliding scale. I just don't know what else an attorney could be aware of that would put them on reasonable notice of a claim. Because the case had been dismissed already by the time that With prejudice, and whether the court, you know, whether Barry and Ace agreed with that or not is not the issue. And we've cited several cases, capital specialty I guess is probably the closest on point, but several cases talking about this set of circumstances where cases have been dismissed, your client's rights have been adversely affected as of that time. Whether ultimately it's corrected, who knows? But at the time that you submitted your application, their rights have been adversely affected. Cases have been dismissed. And Paulson and Ace don't really respond to those cases in their brief, and I can understand why, because there's really no way around it. You know, this issue about expert testimony, again, that's not what the district court was doing. She was not substituting her expert opinion. It was a, you know, based on a reasonable person. No jury could find otherwise. This is just too clear. But if, and there are cases. The capital specialty did not, capital specialty case did the exact same thing. There was no expert testimony, no argument that it was needed. The court ruled as a matter of law based on these facts. So there's precedent for this. But I would submit that if for some reason expert testimony were required for some reason, that's Paulson and Ace's burden. They have the burden of establishing that the insuring agreement has been met in this case. You know, it's sort of like an occurrence policy where the insured to get coverage first has to show that this case involved an occurrence or an accident or property damage. Once they've done that, then it's the insurance company's burden to show maybe that an exclusion applied. Here, Paulson and Ace, the language that we're talking about is a threshold requirement in the insuring agreement. And it is absolutely undisputed, again, no dispute by Paulson and Ace, at least not with legal authority, that it's the insured's burden to establish that the terms of the insuring agreement have been met. So even if expert testimony were somehow required, that was not our burden. It was Paulson and Ace's burden to bring forth expert testimony to say, no reasonable attorney could have believed this was an error. Let me ask you about the waiver defense. Sure. What happened on November 21st of 2011 when CIC realized that the date of the error was actually prior to their policy? Right. It issued a reservation of rights. Actually, I think we- I know, but what triggered that? The realization, the finding out, I'm not sure the exact details about how CIC actually finally realized that this was, you know, that the error had not been committed before or had not been committed during the policy period, as Barry and Ace had specifically represented to CIC in his notice of claim. I don't know if they reviewed the underlying briefs and decided, hey, all of a sudden, this is not, this was not committed. Well, the medical malpractice was filed, what, three months later? The legal malpractice action against Barry and Ace was filed- That's right. Yeah, that was filed. We found out in November, that's undisputed, that the first time that Sarah Gilbert made a claim was when she filed her legal malpractice lawsuit, and that was in March of 2012. Oh, okay. And so we found out in late November that this error was, in fact, committed before a policy. Within about a month, maybe six weeks, a reservation of rights letter was sent to Halston and Ace's firm. This is even before Sarah Gilbert had filed her lawsuit. Right. So, and then, of course, once she did file a lawsuit, we sent another one saying, we're going to defend you, but under reservation of rights. Here's why. It was essentially the same coverage reasons as before. And, again, I think the district court, you know, correctly rejected that waiver argument. There was no intent to waive this, the right to insist that the insuring agreement be met, particularly when, you know, we had been misled to believe that it was, this error was committed during the policy period. So one other issue, because Paulson and Ace relies so heavily on this statute, this Virginia statute says that in specific cases, not all cases where an insurance company has coverage defenses, but only when they have a defense related to a breach of the policy by the insured, they're supposed to send a reservation of rights letter to the claimant. We didn't do that. That's admitted. Of course, the claimant did have notice of our coverage defenses for more than a year before her case went to trial. So if, you know, the purpose of the statute, I'm assuming, obviously, is to let the claimant know that there's coverage defenses, so that if she decides, you know what, maybe I don't want to litigate this Med-Mal case, maybe I want to stay it until I find out if there's coverage. She knew about it for a year, didn't do anything. So I submit that there's, you know, there's no prejudice, and Virginia courts have held that there must be prejudice for this to result in a waiver. But I guess the threshold requirement, obviously, is does the statute even apply here? And although Mr. Horvath argues at length that, well, we argued that D.C. law applied when we were in the Virginia court, we only meant it to apply to, I guess, contract issues, not the statute. They didn't make that distinction in the Virginia court. And whether there is formal judicial estoppel or not, I don't know. But I think the district court was correct in recognizing that, although she didn't base her decision on this, that, you know, you can't reward conduct in alleging for one purpose in one court where you don't want to litigate in Virginia, so you argue long and hard that D.C. law applies. Then when you get to D.C., you say, oh, by the way, there is one statute we like in Virginia, we'd like to apply here. That statute does not apply. If it's substantive, you have to go through the choice of law analysis. And the choice of law analysis on D.C. is clear. Where is the principal place of the risk? That's D.C. That's where Paulson and Nace is located, where they reside, where the vast majority of their business is, where the policy was negotiated, issued. I don't – understandably, Paulson and Nace doesn't really address that argument because there's really no way around that either. And so we would submit that that statute really is a red herring on multiple levels, in addition to not being, you know, a D.C. statute. And D.C. is contrary to that statute. There's no requirement in D.C. that you have to send a reservation of rights to a claimant. And so there is a conflict in those laws. The district court correctly held that under that situation, we must apply D.C. law. And, again, I think it's a fair result, given that there was no prejudice to the claimant. And so I don't know that I really have anything more, unless you have questions. We submit that the district court correctly applied the D.C. law and held that there's no coverage based on the fact that prior to the policy, Paulson and Nace had a reasonable reason to know that an error had been committed. All right. Thank you. Thank you. Do you have any questions, Horvath? Do you have any questions? All right, Mr. Horvath, your time is up, and we have no questions. So will you call the next case, please? I just responded to a couple of points to correct the record. You said that Mr. Nace said that he admitted there was no error. I just checked that he did not. He did not admit that there was error. So I think that should be corrected. All right. Thank you. Thank you.
judges: Henderson, Srinivasan, Wilkins